# In the United States Court of Federal Claims

No. 16-107C
(Filed: October 13, 2017)
FOR PUBLICATION

*************************************

| | |
|---|---|
| **VERNON MOODY and ANITA MOODY,** | * <br> * <br> * Partial Motion to Dismiss under RCFC 12 (b)(1) <br> * and 12 (b)(6); American Indian Agricultural <br> * Resources Management Act, 25 U.S.C. §§ 3701 <br> * *et seq*; Bureau of Indian Affairs ("BIA"); Privity <br> * of Contract; Express Lease; *United States v.* <br> * *Algoma Lumber Co.*, 305 U.S. 415 (1939); <br> * 25 C.F.R. § 162.101; Oral and Implied in Fact <br> * Contract; *Quantum Meruit*; U.S. Const. amend. V <br> * <br> * <br> * <br> * |
| Plaintiffs, | |
| v. | |
| **THE UNITED STATES,** | |
| Defendant. | |

*************************************

*Terry L. Pechota*, Pechota Law Office, Rapid City, SD, for Plaintiffs.

*Margaret J. Jantzen*, US Dep't of Justice, Washington, DC, for Defendant.

## OPINION AND ORDER

**Damich**, Senior Judge:

      Before the Court is the Defendant's partial motion to dismiss the first three counts of Plaintiffs' four-count amended complaint for lack of jurisdiction and for failure to state a claim upon which relief can be granted. This case concerns five agricultural leases entered into between Plaintiffs and the Oglala Sioux Tribe. In their amended complaint, Plaintiffs allege that the Defendant breached the leases by terminating them for failure to submit payments and other required documentation ("Count I"), or in the alternative, by terminating five oral and implied-in-fact contracts when it ordered them to vacate the land ("Count II"), and they allege a taking of Plaintiffs' property without just compensation under the Fifth Amendment ("Count III"). Plaintiffs also claim that the Defendant "illegally exacted" $43,465.64 ("Count IV").[1] The Defendant moves to have Count I dismissed for a lack of jurisdiction and Counts II and III dismissed for failure to state a claim upon which relief can be granted. The motion is fully briefed and is now ripe for decision.

---

[1] In its motion Defendant does not move to dismiss Count IV.

For the reasons discussed below the Court **GRANTS** the Defendant's partial motion to dismiss. Count I is **DISMISSED** for lack of jurisdiction. Counts II and III are **DISMISSED** for failure to state a claim upon which relief can be granted.

I. **Statement of Facts**

A. **Facts of the Case**

In June 2011, Plaintiffs, Vernon and Anita Moody, entered into five-year leases for five parcels of land with the Oglala Sioux Indian landowners on their Pine Ridge Indian Reservation in South Dakota, which were approved by the BIA's Pine Ridge Agency. Def.'s Mot. at 5. All five parcels of land were located on the Indian reservation in Shannon County, South Dakota. *See* Am. Compl. ¶ 6. The Oglala Sioux Tribe was a signatory to all five leases; no individual Indians signed the lease. Mr. Moody was a party to the first three, and Mrs. Moody a party to the remaining two. Def.'s Mot. at 6. The leases were also signed by a BIA official as "Approving Official," *e.g.* Compl. at Ex. 1, and the leases were issued at the BIA Pine Ridge Agency. Pls.' Opp. at 6.

While the leases did not contain the same language, each specifically outlined that the "lessors" were the Tribe and the "lessee" was either Mr. or Mrs. Moody. Def.'s Mot. at 6. The following provision from lease 1 is identical to the language in leases 3, 4, and 5:

> THIS LEASE, made and entered into on this 1st day of June 2011 by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of Indians), hereinafter called the LESSOR, and VERNON MOODY, 602 NORTH GREELY SCOTIA NE 68875 hereinafter called the LESSEE, in accordance with the provisions of existing law and the regulations (25 CFR 162), which, by reference, are made part hereof.

*See* Compl. at Ex. 1. *See also* Compl. at Ex. 3-5 (containing the same language, but for, the interchanging of Plaintiffs' names as lessee). Lease 2 also contains similar language:

> It is hereby agreed by and between The Olgala Sioux Tribe (Lessors), and Vern Moody, 602 N. Greely St., Scocia, NE 68875, (Lessee), that Lease No. 1-T0561-11-15, described as: All of section 12-37-42, is hereby MODIFIED as follows.

Compl. at Ex. 2.

In their amended complaint, Plaintiffs claim that they made all of their land payments in 2011, but, in 2012 they allege there was some confusion concerning the amount they owed the Indian landowners. To resolve the confusion, Plaintiffs visited the BIA Pine Ridge Agency "to settle up." Am. Compl. ¶ 15. When Plaintiffs visited the BIA Pine Ridge Agency on February 27, 2013, they became aware that they owed $43,465.64 on the 2012 leases. Am. Compl. ¶ 15. Plaintiffs claim that on the next day they wrote a personal check in that amount. Am. Compl. ¶ 16. However, between April 10 and 15, 2013, the BIA returned the check and informed them

that the payment could not be processed and requested new payment be made in the form of a money order or cashier's check.[2]  Am. Compl. ¶ 18.

On April 4, 2013, the BIA notified the Moodys of violations, and then on April 18, 2013, the BIA sent a letter to Plaintiffs cancelling Leases 1 and 2 for failure to submit payment and bonding.  Compl. at Ex. 12.  On the same day, the BIA cancelled Leases 4 and 5 for failure to submit bonding and crop insurance.  Compl. at Ex. 13.  These documents stated that, ""this letter will serve as your official notification that effective April 18, 2013, [the leases are] hereby cancelled for non-compliance."  Compl. at Ex. 8.  They further instructed Plaintiffs of their appeal rights and notified that the lease would officially be cancelled in thirty days, per the regulation.  Compl. at Ex. 8.

After receiving the notice and letters, Plaintiffs went to the BIA Pine Ridge Agency on April 22, 2013, and provided a cashier's check in the amount of $43,465.64 to Robert Ecoffey (the superintendent of the Pine Ridge Agency) in order to pay off the 2012 leases.  Am. Compl. ¶ 19.  The complaint then alleges that Mr. Ecoffey, after Plaintiffs asked him whether or not they needed to appeal the lease cancellations, told them that they did not need to appeal and they should continue to farm Leases 1, 2, 4, and 5 Am. Compl. ¶ 20.  Based on this advice, Plaintiffs continued to farm the leases, but they were given a notice of trespass on June 3, 2013.  Am. Compl. ¶ 22.  Upon receiving this notice, Plaintiffs went to the Pine Ridge Agency and spoke with Cleve Her Many Horses (who replaced the recently retired Mr. Ecoffey as superintendent).  Am. Compl. ¶ 23.  Mr. Her Many Horses (and a person named Diane) then advised Plaintiffs as Mr. Ecoffey had done: continue farming the land.  Am. Compl. ¶ 24.  Nevertheless, shortly thereafter, Mr. Her Many Horses instructed the Plaintiffs to vacate the land.  Am. Compl. ¶ 25.  On July 9, 2013, the BIA also informed Plaintiffs that it was cancelling Lease 3, the final lease, for failing to submit required bonding, crop reports, and negotiable warehouse receipts.  Am. Compl. ¶ 26.  Plaintiffs then filed this complaint on January 21, 2016 alleging $1,500,000 in damages for the cancellation of the five leases.  Am. Compl. ¶ 27-30.

### B. Statutory Framework Under 25 U.S.C. §§ 3701 et seq.

The American Indian Agricultural Resources Management Act ("AIARMA") authorizes the Secretary of the Interior "to take part in the management of Indian agricultural lands."  25 U.S.C. § 3702(2).  In section 3711(a), Congress directed the Secretary to manage Indian lands to achieve several objectives.  25 U.S.C. § 3711(a).  Included among the objectives is the duty to help Indian agricultural landowners to lease their lands.  25 U.S.C. § 3711(a)(6).  Congress did not allow AIARMA to explicitly waive sovereign immunity, or authorize the tribal justice systems to review actions of the Secretary.  25 U.S.C. § 3712(d).

The Secretary has delegated his statutory authority to the BIA, which has in turn promulgated regulations governing agricultural leases on Indian land.  The BIA regulations require Indian landowners to obtain approval from the BIA before granting leases on their lands.

---

[2] Also, on March 7, 2013, the BIA sent the Moodys a similar message stating that the check was being returned as it could not be process due to a Magnetic Ink Character Recognition error.  Compl. at Ex. 9.

3

25 U.S.C. § 3715(a)-(b); 25 C.F.R. §§ 162.107; 162.207; 162.214.  Generally, the BIA will approve any lease that is in the best interest of an Indian landowner, 25 C.F.R. § 162.214, and often defer to the Indian landowner's determination as to what is in their best interest.  25 C.F.R. § 162.107(a).  The AIARMA regulations make clear that the Indian tribe has the sole authority to grant leases on their land.  *See* 25 C.F.R. § 162.252(a) ("Tribes grant leases of tribally-owned agricultural land, including any tribally-owned undivided interest(s) in a fractionated tract, subject to our approval.").  However, AIARMA carves out six scenarios where the BIA has the ability to lease the land on their own.[3]

In addition to approval authority, the BIA is the enforcement mechanism of the lease on behalf of the Indian landowners, including the cancellation.  When the BIA cancels a lease for the Indian landowners, it must send a letter to the lessee detailing: the grounds for cancellation, notice of any unpaid rent, appeal rights, and an order to vacate the property within thirty days unless a timely appeal is filed.  25 C.F.R. § 162.252(c)(1)-(4).  The lease is considered to be cancelled and final at the expiration of the thirty days.  25 C.F.R. § 162.254.  If the land is not vacated after the thirty day notice, the continued possession of the land constitutes a trespass and the BIA will take action to recover the land.  25 C.F.R. § 162.256.

The BIA regulations define a lease as a "written agreement between Indian landowners and a tenant or lessee, whereby the tenant or lessee is granted a right to possession of Indian land, for a specified purpose and duration.  Unless otherwise provided, the use of this term will also include permits, as appropriate."  25 C.F.R. § 162.101.

## II. Discussion

The Defendant moves to dismiss Count I for lack of jurisdiction as it alleges that it was not a party to the express leases.  Further, the Defendant claims that Count II fails to state a claim and must be dismissed because the express/written leases preclude the existence of implied in fact contracts.  In addition, the Defendant alleges that Count III fails to state a proper takings claims and should also be dismissed.

### A. Lack of Jurisdiction

Subject matter jurisdiction is a threshold requirement that must be determined for a court to hear the case.  *Dow Jones & Co. v. Ablaise Ltd.*, 606 F.3d 1338, 1348 (Fed. Cir. 2010).  When considering a motion to dismiss, the Court considers the facts alleged in the complaint to be true.  *Reynolds v. Army & Air Force Exch. Serv.*, 846 F2d 746, 747 (Fed. Cir. 1988).  However, the plaintiff bears the burden of establishing subject matter jurisdiction by preponderant evidence.  *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002).  If the court finds that at any time

---

[3] The BIA may grant agricultural leases on behalf of "(1) Individuals who are found to be non compos mentis . . .; (2) Orphaned minors; (3) The undetermined heirs and devisees of deceased Indian owners; (4) Individuals who have given us a written power of attorney to lease their land; (5) Individuals whose whereabouts are unknown . . .; and (6) The individual Indian landowners of fractionated Indian land, when necessary to protect the interests of the individual Indian landowners;" or in circumstances when land is not being used.  25 C.F.R. § 162.209.

it lacks subject matter jurisdiction, it must dismiss the action. RCFC 12(h)(3). Also, if a plaintiff fails to state a claim upon which relief can be granted, under RCFC 12(b)(6), the complaint must be dismissed. *Lindsay v. United States*, 295 F.3d 1252, 1257 (Fed. Cir. 2002) (stating that a complaint must be dismissed "when the facts asserted by the claimant do not entitle him to a legal remedy.").

Pursuant to the Tucker Act, the Court of Federal Claims possesses jurisdiction over express or implied contracts with the United States. 28 U.S.C. § 1491(a)(1). "In other words, there must be privity of contract between the plaintiff and the United States." *Cienega Gardens v. United States*, 194 F.3d 1231, 1239 (Fed. Cir. 1998). In this case, because there is no contract between Plaintiffs and United States, Counts I and II of the complaint must be dismissed for lack of subject matter jurisdiction. Also, because Plaintiffs fail to properly state a takings claim, Count III must be dismissed.

In its motion to dismiss Count I, the Defendant argues that it is not a party to the express leases, but merely manages it on behalf of the Indian landowners. It maintains that these specific leases are between the Moodys as lessees and the Sioux Tribe as lessors, AIARMA specifically defines a lease as a contract between the Indian tribe and lessee, and judicial precedent has held in similar situations that the BIA is not in privity of contract.

Plaintiffs respond that the Defendant is a party to the leases because the leases do not mention specific owners (i.e.: no Indian or Indians are specifically denominated as lessors in the leases), the leases are signed by BIA officials, they were issued at the BIA Pine Ridge Agency, legal title to the land belongs to the Defendant, and "the very first sentence of the leases indicate that the BIA[,] acting on behalf of the unspecified Indians[,] is the lessor." Pls.' Opp. at 6. Plaintiffs' main claim is that the "BIA did not merely approve leases issued by someone else; it signed the leases." Pls.' Opp. at 6.

Beginning with the lease provisions, this Court holds that the Defendant is not a party to the lease. Demonstratively, each lease contains this language, "THIS LEASE, made and entered into . . . by and between the Indian or Indians named below (the Secretary of the Interior acting for and on behalf of Indians), hereinafter called the LESSOR, and VERNON MOODY . . . ." This language specifically names three parties: the "Indian or Indians," the Secretary of the Interior, and Vernon Moody (or Anita Moody depending on the specific contract). However, the contract states that "the Secretary of the Interior [is] *acting for and on behalf of the Indians*." Thus, although the Secretary is mentioned in the lease, subsequent language clarifies that his or her role is as a fiduciary. The combination, on the one hand, of the language that the Indians and the Moodys are the lessors and lessees respectively with, on the other hand, the language of the Secretary's fiduciary role, leads the Court to the conclusion that the Defendant is not in privity of contract with the Moodys. The Court's conclusion is bolstered by that fact that the regulations explicitly define a lease as a "written agreement *between Indian landowners and a tenant or lessee*, whereby the tenant or lessee is granted a right to possession of Indian land, for a specified purpose and duration." 25 C.F.R. § 162.101. The Court does not consider it significant that individual Indians were not signatories to the lease, as the regulations permit tribes to be lessors. 25 C.F.R. § 162.101. Nor, given the language of the lease discussed above, is it significant that

the lease form was provided by the BIA and that the lease was executed at the BIA Pine Ridge Agency.

In addition to the lease, statutory, and regulation language, the Defendant relies on two cases: *O'Bryan v. United States*, 93 Fed. Cl. 57 (2010), *aff'd* 417 Fed. App'x 979 (Fed. Cir. 2011), holding that the BIA did not have privity of contract with permitees for grazing permits, and *United States v. Algoma Lumber Company*, 305 U.S. 415 (1939), noting that the Secretary of the Interior is not liable to third parties when it contracts on behalf of Indian tribes. Plaintiffs contend that these cases are inapplicable, since it argues that the BIA was a party to the contract, not acting on behalf of the Sioux Tribe. Pls.' Opp. at 8.

In *O'Bryan*, the court granted the defendant's motion to dismiss on the grounds that there was no privity of contract. *O'Bryan*, 93 Fed. Cl. at 59. The case dealt with the BIA's administration of grazing permits on Indian land. After the plaintiff sued the government for breach, the court held that "the permits are contracts with the Indian landowners and not with the United States." *O'Bryan*, 93 Fed. Cl. at 63. The court highlighted the fact that the plain language of the permits provided that they were between the plaintiff and the Indian landowners. *O'Bryan*, 93 Fed. Cl. at 64. The court also noted that the United States acting through the BIA, "cannot be understood as acting for its own account . . . but must instead be seen as acting in its role as trustee for the Indians." *O'Bryan*, 93 Fed. Cl. at 64.

The Supreme Court in *Algoma*, held that there was no privity of contract between the United States and plaintiff when the Secretary of the Interior approved of the sale of timber between the Klamath Indian Tribe and plaintiff. *Algoma Lumber Co.*, 305 U.S. at 422 The Court explained that the supervisory role of the Secretary of Interior in the execution of contracts involving Indians is "consistent with the exercise of its function as protector of the Indians," without the assumption by the United States of any express or implied obligation toward performance. *Algoma Lumber Co.*, 305 U.S. at 422. In other words, "the United States is not liable to third parties when it contracts with them on behalf of Indian tribes." *Sangre de Cristo Development Company v. United States*, 932 F.2d 891, 895 (10th Cir. 1991).

Similar to the grazing permits in *O'Bryan* and the sale of timber in *Algoma*, the United States does not have privity of contract when it signs the leases as an approval authority pursuant to a statute or as an administrator of that contract. As expressed in AIARMA, neither the Secretary nor BIA could have granted or approved the leases on behalf of the United States, but instead, could have only acted on behalf of the Sioux Tribe.

The fact that the Defendant has legal title to the leased land in trust for the Sioux Tribe does not establish privity of contract and only reinforces the holding in *O'Bryan* and *Algoma*. AIARMA and the leasing regulations are grounded on the trust responsibilities of the United States for the management of Indian land. Therefore, the United States cannot be seen as acting on its own behalf in authorizing and managing leases, but instead, should be seen as performing its duty as trustee to the Indian landowner. And in this capacity, the United States neither intends nor creates a contract right in the lessees' favor. *Algoma Lumber Co.*, 305 U.S. at 422.

In conclusion, the contract was between the Sioux and the Moodys, and the BIA acted pursuant to its authority under AIARMA as trustee to the Indian landowners. As such, this Court holds that there is no privity of contract between Plaintiffs and the Defendant, but rather between the Olaga Sioux Tribe and Plaintiffs. As the Defendant is not a party to the express lease, Count I must be dismissed.

### B. Failure to State a Claim

The Defendant argues that Count II should be dismissed for failure to state a claim upon which relief may be granted, pursuant to RCFC 12(b)(6). For this kind of motion, the allegations of the complaint are construed favorably to the pleader, *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), but the "'complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Zulueta v. United States*, No. 09-681C, 2013 U.S. Claims LEXIS 24, at *12 (Fed. Cl. Jan. 29, 2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Dismissal for failure to state a claim is warranted only when it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim [that] would entitle him to relief." *Ponder v. United States*, 117 F.3d 549, 552-53 (Fed. Cir. 1997).

### 1. Count II – Oral and Implied in Fact Contract

The Defendant argues that Count II should be dismissed because the written leases dealing with the same subject matter precluded the creation of an oral or implied in fact contract, the BIA lacks authority to *grant* leases, and the BIA regulations prohibit oral leases.

Plaintiffs contend that when BIA Superintendent Ecoffey on April 22, 2013 and BIA Superintendent Her Many Horses on or about June 3, 2013 told them to continue farming, four of the leases (1, 2, 4, and 5), which had been cancelled, were revived or ratified.[4] Plaintiffs characterize the alleged revival or ratification as an oral or implied in fact contract. In addition to this contention, for the first time, Plaintiffs claim that they are entitled to be compensated on a *quantum meruit* basis.

First, the Defendant points out that the express leases were in effect on the dates when the Plaintiffs claim that the oral or implied in fact leases were made. Specifically, the Defendant notes that the BIA initiated cancellations of four leases on April 18, 2013, and the final lease on July 9, 2013. Since 25 C.F.R. § 162.254 provides that leases are officially cancelled 30 days after the tenant receives a cancellation letter (pending an appeal), new contracts over the same subject-matter could not have been created on April 22, 2013, the date of Plaintiffs meeting with Mr. Ecoffey, twenty eight days before the expiration of the leases. *See Trauma Serv. Grp. v. United States*, 104 F.3d 1321, 1326 (Fed. Cir. 1997) ("an implied-in-fact contract cannot exist if an express contract already covers the same subject matter."). Simply stated, according to the Defendant, the leases stayed in effect until the regulatory cancellation date, on or about May 18, 2013, and an implied in fact contract cannot be formed before this date.

---

[4] Plaintiffs do not argue revival and ratification for the remaining lease, 5.

Second, the Defendant argues, as it does in Count I, that the BIA lacked the authority in this situation to grant leases for Indian landowners without the tribe's express direction, since the exceptions carved out in AIARMA have not been alleged to apply. Def.'s Mot. to 17-18. *See* 25 U.S.C. § 415(a) ("Any restricted Indian lands, whether tribally, or individually owned, *may be leased by the Indian owners*, *with the approval of the Secretary* . . . .") (emphasis added). Third, the Defendant maintains that, pursuant to the regulations, a lease is a written agreement, not an oral one. Def.'s Mot. at 18. Therefore, the Defendant concludes that Plaintiffs have failed to state a claim.

As noted above, Plaintiffs contend that Mr. Ecoffey and Mr. Her Many Horses orally created new leases under the terms of the previous written leases, the leases having been cancelled. Therefore, Plaintiffs reason that an oral and implied in fact contract is not precluded because the original lease was in writing. *See* Pls.' Opp. at 13 (claiming that the discussion between the Moodys and the BIA Superintendents "revive[d] and ratif[ied] the original lease which was in writing."). Plaintiffs also conclude that it is irrelevant that the regulations prohibit oral leases, because the original lease was in writing. Pls.' Opp. at 13.

The Defendant is persuasive in maintaining that the express contracts governing the same five parcels of land in dispute were in effect on April 22, 2013, the date the oral agreement is pled to have been formed between Mr. Ecoffey and Plaintiff. And as explained in *Trauma*, no implied in fact contract can be formed when an express contract exists governing the same subject matter.

Plaintiffs could have filed an appeal within 30 days of receiving the notice of cancellation. The Moodys did not appeal and the cancellations were to become effective on May 18, 2013, 30 days after the implied in fact contract is alleged to been formed.[5] In other words, the cancellations needed to be final and expired before they could have been revived. *See Seven Resorts, Inc. v. United States*, 112 Fed. Cl. 745, 780 (2013) ("[i]f, after the *expiration* of a contract, the parties continue to perform under the contract's terms, the parties' relationship is generally governed by a new, implied in fact contract that incorporates the terms of the expired contract."); Revival, Black's Law Dictionary (10th ed. 2014) (defining revival as "the act of restoring the validity or legal force of an *expired* contract.") (emphasis added). Therefore, these alleged oral and implied in fact contracts regarding the same five parcels of land are precluded.

Nevertheless, even if the existing express contracts did not preclude the existence of implied in fact contracts, the BIA did not have the authority to "ratify the terminated leases anew." Pls.' Opp. at 14. The regulations provide that the BIA cannot enter into express contracts to lease these parcels unless it receives direct authorization from the Indian landowners, except in certain limited circumstances, none of which is alleged to apply in this case. *See* 25 C.F.R. § 162.209. Thus, AIARMA prevents the BIA from being a party to the oral and implied in fact contract since *only* the Olaga Sioux Tribe was authorized to grant leases on their lands.

---

[5] The Moodys were informed of their right to appeal and of the effective date of the cancellation in the letters of cancellation that they received from the BIA. *Supra* at 3.

8

Finally, the Court turns to the *quantum meruit* claim. While this Court is sympathetic to Plaintiffs' situation, it cannot entertain Plaintiffs *quantum meruit* claim for it is not pleaded in their complaint. However, even if it was pleaded, because this Court has already established that there is no contract between the BIA and the Moodys, Plaintiffs cannot recover in a *quantum meruit* basis. *See N.H. Flight Procurement, LLC v. United States*, 118 Fed. Cl. 203, 236 (2014) ("to recover on a *quantum meruit* . . . basis, however, the circumstances must permit the court to conclude that all the basic elements of an implied-in-fact contract were present between plaintiff and the government.").

### 2. Count III – Fifth Amendment Taking Claim

Regarding Count III, the Defendant argues that the Fifth Amendment taking claim should be dismissed for failure to state a claim upon which relief can be granted.

In support of their Fifth Amendment takings claim, Plaintiffs argue that the Defendant forced them to "abandon the fruits of their farming" by forcing them off the parcels of land. Pls.' Opp. at 16. They continue to explain that, had Mr. Ecoffey and Mr. Her Many Horses not told them to continue farming, they would not have continued to invest in the farming operations. Pls.' Opp. at 16. Further, Plaintiffs contend that the regulations 25 C.F.R. §§ 162.247-162.256 "do not permit leases to be cancelled by instructing lessees to immediately remove" themselves from the property. Pls.' Opp. at 18.

The Defendant claims that the count should be dismissed because Plaintiffs' base their takings claim on an alleged violation of regulations by the BIA. Am. Compl. ¶ 32. The Defendant points out that in order for a taking by the U.S. government to be compensable, it must be a lawful one. In other words, because Plaintiffs allege that the Defendant violated a regulation, rather than a lawful one that "effectuated a takings of [their] property," the complaint fails to state a claim, and it must be dismissed. *Davis v. United States*, 123 Fed. Cl. 235, 243 (2015).

The Fifth Amendment to the United States Constitution provides that private property shall not be taken for public use without just compensation. U.S. Const. amend. V. Either real, personal, or intangible property may constitute the *res* of a takings claim. *Am. Pelagic Fishing Co., L.P. v. United States*, 379 F.3d 1363, 1371 (Fed. Cir. 2004). However, "an uncompensated taking and an unlawful government action constitute two separate wrongs that give rise to two separate causes of action." *Acadia Technology, Inc. v. United States*, 458 F.3d 1327, 1331 (Fed. Cir. 2006). "'[T]o the extent that the plaintiff claims it is entitled to prevail *because* the agency acted in violation of statute or regulation,' plaintiff does not have the 'right to litigate that issue in a takings action rather than in the congressionally mandated administrative review proceeding.'" *Normandy Apartments, Ltd. v. United States*, 116 Fed. Cl. 431, 439 (2014) (quoting *Rith Energy v. United States*, 247 F.3d 1355, 1366 (Fed. Cir. 2001)). Thus, as the Defendant correctly identifies, in order to pursue a takings claim in the Court of Federal Claims without previously litigating the administrative issue, Plaintiffs must proceed on the "assumption that the administrative action was both authorized and lawful." *Id.* The Plaintiffs' amended complaint clearly alleges that the BIA committed an "unlawful termination and breach of lease agreements" contrary to 25 C.F.R. §§ 162.247-162.256. Am. Compl. ¶ 32. Because Plaintiffs

allege that the Defendant violated a regulation, rather than acted lawfully in accordance with one that effectuated the taking, this Court holds that the complaint fails to state a takings claim and, therefore, Count III must be dismissed.

A final note: This Court has ruled in the Defendant's favor on this Motion; however, it has a lingering doubt about the justness of this decision, despite the fact that it is confident that the decision is in accordance with the law. All of the actions pertaining to the lease, once executed, were performed by the BIA. The Oglala Sioux Tribe seems to have done nothing but appear in and sign the leases. Yet, the *Algoma* decision instructs courts to ignore the massive involvement of the BIA in the management of Indian affairs and focus instead on the narrow language of the leases. It appears that the only persons that the Moodys dealt with regarding the leases were BIA officials. The BIA officials—not the Tribe—sent notices of violations and letters of cancellation. The BIA officials told the Plaintiffs to continue to farm the land (if this allegation is true). Under these circumstances, it seems that a reasonable person would take the officials at their word and continue to farm the land. Something is wrong here, when the law requires the Court to focus entirely on the technicality that the tribe is the lessor and to ignore the BIA officials who are the real actors. One is reminded of the *Wizard of Oz* movie: "Pay no attention to the man behind the curtain!" Nevertheless, in the end, it is not this Court's role to make law or to ignore binding authority.

### III. Conclusion

For the foregoing reasons, the Court hereby **GRANTS** the Defendant's partial motion to dismiss. Count I is **DISMISSED** for lack of jurisdiction. Counts II and III are **DISMISSED** for failure to state a claim upon which relief can be granted.

Defendant shall file its Answer regarding Count IV of Plaintiffs' Amended Complaint within fourteen (14) days from the filing of this opinion.

**IT IS SO ORDERED**.

s/ Edward J. Damich
EDWARD J. DAMICH
Senior Judge